IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

**GEEKY BABY, LLC,**
a Florida limited liability company,

        Plaintiff,

Case No. _____

v.

**COMPLAINT**

**IDEA VILLAGE PRODUCTS, CORP.,**
a New Jersey corporation,

        Defendant.

## PARTIES AND JURISDICTION

1. Geeky Baby, LLC ("Geeky Baby" or "Plaintiff") is a limited liability company organized and existing under the laws of the State of Florida, with its principal place of business at 1111 Lincoln Road, 4th Floor, Miami Beach, Florida 33139.

2. Idea Village Products Corp. ("Idea Village" or "Defendant") is a corporation organized and existing under the Laws of the State of New Jersey, with its principal place of business at 155 Route 46 West, Wayne, New Jersey 07470.

3. Plaintiff and Defendant entered into a Marketing Agreement ("the Agreement") dated August 15, 2013, a copy of which is attached hereto as Exhibit A. Said Agreement states, at Paragraph 15, "[t]he Parties agree to jurisdiction and venue in both Florida and New Jersey." Subsequently, the parties signed a Marketing Agreement Addendum ("the Addendum") dated July 25, 2014, a copy of which is attached hereto as Exhibit B. Said Addendum states, at

Paragraph 3, that "the Parties agree that the proper venue for any actions, claims or proceedings relating to the Agreements shall be in New Jersey."

4. This Court has subject matter jurisdiction over this matter pursuant to 28 U.S.C. § 1331 (federal question), § 1332 (diversity) and § 1367 (supplemental jurisdiction).

5. This Court has personal jurisdiction over Defendant both by agreement, and because Defendant exists and operates its business within the jurisdiction of this Court.

6. Venue is proper both by agreement and pursuant to 28 U.S.C. § 1391(b) and (c).

## FACTUAL BACKGROUND

7. Mr. Steven Verona invented a product known as FunLoom.

8. Geeky Baby, LLC was formed to develop, market and sell FunLoom. FunLoom is a single-piece cast plastic loom which is used to create rubber band bracelets and other items.

9. In 2013, the business for looms such as FunLoom was a booming business, into which many competitors entered.

10. This business included not only the sale of looms, but the sale of replacement packages of rubber bands which could be used in conjunction with looms to make additional bracelets and other items.

11. Plaintiff and Defendant entered into Exhibit A in order to take advantage of this booming business. Plaintiff hoped that Defendant would use its mass-marketing and sales ability to achieve a substantial market share for FunLoom and that both Plaintiff and Defendant would be successful in this venture. Defendant wished to enter the market rapidly, and reaching an agreement with Plaintiff allowed it to do so, since Plaintiff had already designed, tested, and produced a loom.

12. Exhibit A required Defendant to pay royalties to Plaintiff for all sales of FunLoom.

13. Defendant failed to pay royalties due and payable under the Agreement.

14. Furthermore, Defendant had certain limited rights to sell replacement rubber bands under Exhibit A. Specifically, Defendant was allowed to "offer for sale a refill package of bands consisting of a multi-colored variety pack of solid colored hybrid silicone and rubber replacement bands."

15. Despite these limitations on its right to sell replacement bands, Defendant breached Exhibit A by selling 100% silicone bands, and by selling colors and styles of bands which it was not authorized to sell (e.g., tie-dyed bands, glow in the dark, etc.).

16. These issues with regard to non-payment of royalties and the sale of replacement bands became the subject of a dispute between the parties.

17. The parties purported to resolve this dispute by entering into the Addendum attached hereto as Exhibit B.

18. Exhibit B left intact Defendant's responsibility to pay royalties going forward, but did decrease the royalty amount for international sales only.

19. Exhibit B further required Defendant to pay a lump sum of $100,000.00 for royalties related to replacement bands, though this amount was contingent upon Defendant's representation as to the accuracy of certain sales figures for replacement bands, which were attached to the Addendum.

20. Exhibit B also required a lump sum of back royalties for the FunLoom in the amount of $151,895.00.

21. Finally, Exhibit B required Defendant to pay to Plaintiff a non-recourse royalty in the amount of $10,000.00 per month for at least six (6) months, beginning in June of 2014.

22. Exhibit B included an obligation for Defendant to use it best efforts to assist Plaintiff in selling its remaining inventory of FunLoom products not manufactured in conjunction with Defendant.

23. Since Exhibit B was signed, Defendant paid only three (3) $10,000.00 non-recourse royalty to Plaintiff, and failed to pay the other three (3) such payments as required.

24. Also since Exhibit B was signed, Defendant has failed to pay royalties as agreed on FunLoom product sales.

25. In addition, Defendant has not used its best efforts to assist Plaintiff in selling its remaining inventory of FunLoom products.

26. Moreover, upon information and belief, the sales figures provided attached to Exhibit B are inaccurate, thus rendering false the representations upon which the Addendum agreement was made.

27. Except as explicitly changed, the Addendum (Exhibit B) left intact the language of the original Marketing Agreement (Exhibit A).

28. In addition to the breaches of Exhibit A that led to the Addendum attached as Exhibit B, there were other obligations of Defendant under Exhibit A that have been breached.

29. Exhibit A requires that Defendant not market or sell products competitive with the FunLoom. Specifically, in Paragraph 6 of Exhibit A states as follows: "IV, during the Term (as defined herein) and for two 2 years thereafter, shall not directly or indirectly, either by itself or in participation with any other person or entity, engage or otherwise assist in the marketing, advertising, distribution, and/or sale of any Competing Products."

30. As set forth elsewhere in Paragraph 6 of Exhibit A, the term "Competing Products" is defined as "any product the function or appearance of which is the same or similar to the Product."

31. In direct violation of Exhibit A, Defendant has marketed, advertised, distributed and sold Competing Products. Specifically, and without limitation, Defendant has marketed, advertised, distributed and sold products known as the "Mini-FunLoom" and the "Pocket Loom."

32. Exhibit A also required FunLoom products produced by Plaintiff to be promoted on all instructional materials and replacement band packaging. Specifically, products from FunLoomPlus.com were to be promoted on these materials, and the funloomplus.com URL was to be printed on these materials. The products to be promoted included "premium" replacement bands available exclusively through Plaintiff. This obligation was breached.

33. All packages of replacement bands not provided by Plaintiff were to be marked as "standard" bands, in contrast to the "premium" bands offered by Plaintiff. This obligation was breached as well.

34. Not only were many of the required royalties not paid, but many of those that were paid were not paid timely per Exhibit A.

35. In addition, Exhibit A requires sales reports to be provided within seven (7) days of the end of each month. Again, this was not done. In fact, no sales report has been provided at all for several of the relevant months.

## THE CHOON'S LAWSUIT

36. Choon's Designs, LLC ("Choon's") is a company which marketed and sold a product known as the Rainbow Loom. The Rainbow Loom is a competitor product to the Fun Loom.

37. In June of 2014, counsel for Choon's contacted Steven Verona of Zenacon, LLC and alleged that the Fun Loom was an infringement on the intellectual property of Choon's. (Zenacon is a company through which products are invented. Plaintiff is the company that handled the FunLoom business.).

38. Thereafter, there was additional correspondence between counsel for Choon's and counsel for Zenacon, LLC. It has been consistently denied that the FunLoom in any manner infringed any valid intellectual property associated with the Rainbow Loom.

39. Verona made Idea Village aware of Choon's infringement claims prior to the execution of Exhibit A.

40. On August 19, 2013, Choon's Design filed a complaint against Verona, Zenacon and Geeky Baby, LLC, alleging in part that the importation, offer for sale, sale, advertisement, and distribution of the FunLoom directly and indirectly infringed United States Patent No. 8,485,565 ("the '565 patent") and diluted U.S. Trademark Registration No. 4,345,796 for the name "RAINBOW LOOM" in connection with Hobby craft kits, namely, kits comprised of flexible rubber bands, looms and a hook ("the '796 trademark"). Said lawsuit was filed in the Eastern District of Michigan as Case No.: 2:13-CV-13568 (the "Choon's Lawsuit").

41. Subsequently, Idea Village was added as a party to the Choon's Lawsuit. In addition, the allegation that the FunLoom infringed upon United States Patent No. 8,684,420 ("the '420 patent") was added to the Choon's Lawsuit.

42. Recently, Verona, Zenacon and Geeky Baby settled the Choon's Lawsuit. However, the lawsuit remains pending against Idea Village. Geeky Baby, LLC expended significant time and money in defense and settlement of the Choon's Lawsuit.

## FIRST CAUSE OF ACTION
### (Breach of Marketing Agreement)

43. Plaintiff re-alleges and incorporates the previous Paragraphs of this Complaint as if fully set forth herein.

44. The Marketing Agreement attached hereto as Exhibit A is a valid contract entered into between the parties.

45. Defendant has breached its obligations under Exhibit A as follows:

   a. Failure to pay royalties as required, and to pay royalties on a timely basis;

   b. Failure to provide sales reports, and to provide sales reports on a timely basis;

   c. Marketing and selling competing products, including loom products competitive with FunLoom, as well as product replacement bands disallowed by the terms of the contract, and competitive with replacement bands sold by Plaintiff; and accessories including the storage organizer case;

   d. Selling loom kits with pure silicone bands, as opposed to hybrid bands;

   e. Selling replacement bands beyond the scope of what is allowed by the terms of Exhibit A;

   f. Failure to promote Plaintiff's FunLoom products and the FunLoomPlus web site on instructional materials and replacement band packaging;

   g. Failure to designate replacement bands not provided by Plaintiff as "standard," as opposed to the "premium" bands available from Plaintiff; and

   h. In other ways to be proven at the trial of this matter.

46. These breaches of contract have proximately caused damage to Plaintiff in numerous ways, and in an amount exceeding $1,000,000.00.

47. The contractual provisions limiting Defendant to the sale of packages of "standard" hybrid bands in bags containing a variety of solid color bands were intended to prevent Defendant from competing with Plaintiff's business of selling "premium" silicone bands, bags containing only one color of bands, and multi-colored or other specialty bands sold exclusively by Plaintiff. By selling bands it was explicitly prohibited from selling under the contract, by refusing to promote the bands sold by Plaintiff, by selling its bands under the FunLoom name, by refusing to designate its own bands as "standard", and by selling its bands at a material discount to Plaintiff's bands, Defendant effectively destroyed Plaintiff's business of selling replacement bands. Plaintiff expected more profit from this business than from the royalties from sales by Defendant.

48. By marketing and selling products directly competitive with FunLoom, and even using the FunLoom name and slogan to do so, Defendant diluted the market for FunLoom products.

49. Plaintiff is entitled not only to actual damages such as failure to pay royalties, but also incidental and consequential damages, and damages for the loss of business and loss of income caused by Defendant's actions.

## SECOND CAUSE OF ACTION
### (Declaratory Judgment)

50. Plaintiff re-alleges and incorporates the previous Paragraphs of this Complaint as if fully set forth herein.

51. Exhibit B was entered into in large part to address the dispute that existed with regard to the improper sales of replacement bands by Defendant.

52. As set forth in Section C(i) of said Exhibit B, the changes to the original agreement with regard to replacement bands was explicitly contingent upon Defendant not breaching its "representations and warranties in this Section C(i)."

53. Upon information and belief, the representations and warranties made in the attachments to Exhibit B with regard to the sales of replacement bands and accessories were materially false, were known by Defendant to be materially false, and were intended to deceive and in fact did deceive Plaintiff to enter into Exhibit B. Defendant's fraudulent conduct also included its concealment of its sale of competing products as detailed elsewhere herein.

54. Exhibit B purports to expand the rights of Defendant to sell replacement bands, in large part by changing the definition of "Product Replacement Bands" from how it was defined in Exhibit A. Exhibit B also limits any and all royalties for replacement bands to a one-time royalty.

55. As these changes were made based upon the fraudulent sales figures attached to Exhibit B, they are void and unenforceable.

56. A genuine controversy exists between the parties as to the enforceability of said portions of Exhibit B.

57. Plaintiff asks the Court to enter a judgment declaring said portions of Exhibit B invalid.

### THIRD CAUSE OF ACTION
### (Breach of Marketing Addendum)

58. Plaintiff re-alleges and incorporates the previous Paragraphs of this Complaint as if fully set forth herein.

59. The Marketing Agreement Addendum attached hereto as Exhibit B is a valid contract entered into between the parties, except as alleged in the Second Cause of Action.

60. Defendant has breached its obligations under Exhibit B as follows:

   a. Failure to pay royalties as required, and to pay royalties on a timely basis;

   b. Failure to pay the non-recourse royalties payments;

   c. Failure to use its best efforts to assist Plaintiff in selling its remaining inventory of FunLoom products; and

   d. In other ways to be proven at the trial of this matter.

61. These breaches of contract have proximately caused damage to Plaintiff in numerous ways, and in amount exceeding $1,000,000.00.

62. By refusing to use its best efforts to assist Plaintiff in selling its remaining inventory of FunLoom products, Defendant caused Plaintiff to be left with a substantial inventory of products that it could not sell, and for which it paid substantial sums.

63. Plaintiff is entitled not only to actual damages such as those for failure to pay royalties, but also incidental and consequential damages, and damages for the loss of business and loss of income caused by Defendant's actions.

## FOURTH CAUSE OF ACTION
### (Indemnification)

64. Plaintiff re-alleges and incorporates the previous Paragraphs of this Complaint as if fully set forth herein.

65. In Exhibit A, Defendant agreed to indemnify Plaintiff and hold it harmless for several categories of claims, including specifically the following: "any third party claim arising out of the Product or its manufacture, use, sale, promotion, marketing, importation, advertising, exploitation, and distribution, including for example any claim of personal injury, trademark

infringement, or false or deceptive advertising (with the exception of any third party claim that results from information and/or marketing materials provided by Licensor to IV)."

66. The Choon's Lawsuit, which sounds in trademark and patent, is a "third party claim arising out of the Product or its manufacture, use, sale, promotion, marketing, importation, advertising, exploitation, and distribution." Indeed, trademark infringement is used as an illustrative example of the types of claims covered.

67. Defendant is required to indemnify Plaintiff with regard to the Choon's Lawsuit.

68. Plaintiff has requested indemnification from Defendant, and has been denied.

69. Defendant's refusal to indemnify Plaintiff with regard to the Choon's Lawsuit has proximately caused damages to Plaintiff in excess of three hundred thousand dollars ($300,000.00).

### FIFTH CAUSE OF ACTION
(Trademark Violation)

70. Plaintiff re-alleges and incorporates the previous Paragraphs of this Complaint as if fully set forth herein.

71. Plaintiff owns and uses U.S. Trademark Registration No. 4532662 for the FunLoom mark, and U.S. Trademark Registration No. 4532663 for the Load it, Loom it, Love it mark, and uses both of these trademarks in connection with its FunLoom products.

72. Defendant used Plaintiff's registered trademarks set forth above in commerce to sell its own similar products without Plaintiff's permission.

73. Defendant used said trademarks to sell competing loom products, such as "Mini-FunLoom" and "Pocket Loom by FunLoom." Neither product was connected in any manner with FunLoom.

74. Defendant further used said trademarks to sell replacement bands directly competitive with Plaintiff's replacement bands, as well as a storage organizer competitive with that sold by Plaintiff.

75. As set forth above, Defendant's sales of these competing products was prohibited by contract and was not authorized in any manner by Plaintiff.

76. Defendant's use of Plaintiff's marks, or confusingly similar variations thereof, to sell similar products without Plaintiff's permission, constitutes a use in commerce "in connection with the sale, offering for sale, distribution, or advertising of any goods or services on or in connection with which such use is likely to cause confusion" in violation of 15 USC § 1114.

77. Defendant's use of Plaintiff's marks, or confusingly similar variations thereof, to sell similar products without Plaintiff's permission, also "was likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of such person with another person, or as to the origin, sponsorship, or approval of his or her goods, services, or commercial activities by another person" in violation of 15 USC § 1125.

78. These acts of Defendant have proximately caused harm to Plaintiff, and Plaintiff is entitled to all of those remedies set forth in 15 USC § 1117.

79. Defendant's willful and unauthorized use of Plaintiff's marks, or marks identical to or substantially indistinguishable from said marks, constitute the use of counterfeit marks as defined by, and in violation of, 15 USC § 1114, 15 USC § 1116 and 18 USC § 2320.

80. These acts of Defendant have proximately caused harm to Plaintiff, and Plaintiff is entitled to all of those remedies set forth in 15 USC § 1117, including, at Plaintiff's option, the statutory penalty set forth at 15 USC § 1117(c)(2) of up to two million dollars ($2,000,000.00) per counterfeit mark per type of goods sold, with said types of goods including, at a minimum,

Mini-FunLoom, Pocket Loom, the storage organizer, and various types of product replacement bands.

WHEREFORE, Plaintiff prays this Court:

1. That it have and recover from Defendant, actual, incidental and consequential damages in an amount in excess of one million dollars (1,000,000.00);

2. That it have and recover an amount in excess of three hundred thousand dollars (300,000.00) for contractual indemnification;

3. A declaration that Defendant's actions constitute violations of 15 U.S.C. §1114, §1116 and §1125, as well as 18 USC § 2320;

4. A declaration that the Defendant's acts of trademark infringement and unfair competition are knowing, willful and "exceptional" within the meaning of 15 U.S.C. §1117;

5. Enter judgment that the Defendant has injured Geeky Baby's business reputation and diluted the distinctive quality of famous marks and trade dress in violation of 15 U.S.C. §1125(c)(1);

6. An order awarding to Geeky Baby its actual damages as well as all of Defendant's profits, including any statutory enhancements on account of the willful nature of Defendant's acts;

7. A declaration that the portions of Exhibit B narrowing the definition of "Product Replacement Bands" and limiting the royalties payable for the sales of such bands be declared invalid.

8. That the judgment bear pre-judgment and post-judgment interest under applicable law;

9. For costs, attorney's fees and trebled damages as applicable;

10. For all statutory penalties applicable, including, at Plaintiff's option, the statutory penalty set forth at 15 USC § 1117(c)(2) of up to two million dollars ($2,000,000.00) per counterfeit mark per type of goods sold;

11. For a jury trial on all issues so triable pursuant to Fed. R. Civ. P. 38(b) and 5(d); and

12. For such other and further relief as the Court deems just and proper.

This the _____ day of May, 2015.

*[signature]*

Eric G. Kahn
Javerbaum Wurgaft Hicks Kahn Wikstrom & Sinins, P.C.
505 Morris Avenue
Springfield, New Jersey 07081
Telephone: (973) 379-4200
Facsimile: (973) 379-7872
Email: EKahn@javerbaumwurgaft.com

and

/s/ Sam McGee
Sam McGee, NC State Bar No. 25343
Tin, Fulton, Walker & Owen, PLLC
301 East Park Avenue
Charlotte, North Carolina 28203
Telephone: (704) 338-1220
Facsimile: (704) 338-1312
Email: smcgee@tinfulton.com
Pending *Pro Hac Vice* Admission

*Attorneys for Plaintiff*