NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| GEEKY BABY, LLC, <br><br> Plaintiff, <br><br> v. <br><br> IDEA VILLAGE PRODUCTS, CORP., <br><br> Defendant. | Civil Action No.: 15-3454 (JLL) <br><br> OPINION |

**LINARES**, Chief District Judge.

This matter comes before the Court by way of Plaintiff Geeky Baby, LLC's Motion for Partial Summary Judgment, (ECF No. 85), and Defendant Idea Village Products, Corp.'s Cross-Motion for Partial Summary Judgment, (ECF No. 88). Both parties filed briefs in opposition and replies thereto. (ECF Nos. 89, 91, 94, 95). The Court heard oral argument on July 11, 2018. (ECF No. 98). For the reasons expressed below, the Court denies both Motions for Partial Summary Judgment, and will dismiss Plaintiff's indemnification claim and Defendant's breach of contract claim seeking indemnification, as neither party is entitled to indemnification.

## I. BACKGROUND[1]

Plaintiff manufactured and sold "FunLoom," which were looms used to create rubber band bracelets. (Def. SMF ¶¶ 1–2). On or around August 9, 2013, Plaintiff entered into an agreement

---

[1] This background is taken from the parties' statements of material facts, pursuant to Local Civil Rule 56.1. (ECF No. 85-1, Plaintiff's Rule 56.1 Statement of Material Facts ("Pl. SMF"); ECF No. 88-2, Defendant's Rule 56.1 Statement of Material Facts ("Def. SMF"); ECF No. 89-1, Defendant's Reply to Plaintiff's Statement of Material Facts; ECF No. 91-1, Plaintiff's Reply to Defendant's Statement of Material Facts). To the extent that Plaintiff admits to any Material Facts as stated by Defendant, the Court will cite only to "Def. SMF" and the relevant paragraph.

with Defendant ("the Marketing Agreement"), whereby Defendant was given the right to manufacture, sell, and market "loom kits containing the following items: looms, hooks, bands, clips, and storage containers as kits with looms," as well as "a refill package of bands consisting of a multi-colored variety pack of solid colored hybrid silicone and rubber replacement bands." (ECF No. 91-2 ("Marketing Agreement") at p. 1). Under the Marketing Agreement, Defendant was also given a license to create a television advertisement and utilize Plaintiff's websites— "funloom.com" and "funloomplus.com"—to market these products. (*Id.* ¶ 1). In exchange, Defendant would make royalty payments to Plaintiff as stated in the Marketing Agreement. (*Id.* ¶ 2). The Marketing Agreement contained an indemnification clause ("the Indemnity Clause"), which stated,

> (a) [Plaintiff] will indemnify, release, and hold [Defendant] harmless from and against any and all claims, lawsuits, costs (including reasonable external attorney's fees and expenses), liabilities, damages, fines, settlements, [*sic*] loses or other expense incurred by or asserted against [Defendant] arising from (i) [Plaintiff's] breach of any of the representations, warranties or covenants in this Agreement, including, but not limited to third party infringement claims; or (ii) [Plaintiff's] own negligence or the negligence of its employees, subcontractors, agents or others acting on its behalf. [Plaintiff] will carry general liability insurance in a minimum amount of two million U.S. Dollars ($2,000,000), with [Defendant] named as an additional insured. Notwithstanding the foregoing, [Plaintiff] shall not be required to indemnify [Defendant] for any claims to be indemnified by [Defendant] as contemplated in Section 12(b).

> (b) [Defendant] will indemnify and hold [Plaintiff] harmless from and against any and all claims, lawsuits, costs (including reasonable attorney's fees and expenses), liabilities, damages, fines, settlements or other expense incurred by or asserted against [Plaintiff] arising from (i) [Defendant's] breach of any of the representations, warranties or covenants in this Agreement; (ii) any infringement of or any conflict with any copyright of any third party with respect to any materials supplied or created by [Defendant] or its agents and vendors (with the exception of [Plaintiff]) and used to in connection with the manufacture, use, sale, promotion, marketing, importation,

2

> advertising, exploitation, and distribution of the Product; (iii) [Defendant's] own negligence or the negligence of its employees, subcontractors, agents or others acting on its behalf all in relation to the Product or the manufacture (to the extent that [Defendant] manufacturers the Product through a party of its choosing), advertising or sale thereof; or (iv) any third party claim arising out of the Product or its manufacture, use, sale, promotion, marketing, importation, advertising, exploitation, and distribution, including for example any claim of personal injury, trademark infringement, or false or deceptive advertising (with the exception of any third party claim that results from information and/or marketing materials provided by [Plaintiff] to [Defendant]). [Defendant] will carry product liability insurance covering these risks for a minimum amount of two million U.S. Dollars ($2,000,000), with [Plaintiff] named as an additional insured.

(*Id.* ¶ 11).

Pursuant to the Marketing Agreement, Plaintiff represented that (i) it has full authority to enter into the Marketing Agreement and perform its obligations; "(ii) it owns all right, title, and interest in and to all Licensed [intellectual property]," such as patents, trademarks, and copyrights related to the product; (iii) the Marketing Agreement does not conflict with any other agreement or contract; and "(iv) the intellectual property licensed (including any commercial) hereunder does not, to the best of [Plaintiff's] knowledge, infringe on any intellectual property rights or any other rights of any third party and that no claim, suit or action is pending against [Plaintiff] for any such infringement." (*Id.* ¶ 12(a)). Defendant made similar representations. (*See id.* ¶ 12(b)).

Before the parties entered into the Marketing Agreement, Plaintiff had received two cease and desist letters from Choon's Design, LLC ("Choon's") in June 2013, which claimed that Plaintiff's FunLoom was infringing on certain intellectual property rights Choon's possessed in its product, "Rainbow Loom." (Def. SMF ¶¶ 9, 14; *see also* ECF No. 91-8 (cease and desist letters)). Though the parties dispute whether Plaintiff provided Defendant with Choon's cease and desist letters, the parties agree that Plaintiff informed Jason Drangel, an attorney who occasionally performs legal services for Defendant, about Choon's position on infringement prior to the parties

entering into the Marketing Agreement. (Def. SMF ¶ 15; Pl. SMF ¶ 5; ECF No. 89-1 ¶ 5). The parties also agree that Plaintiff provided Mr. Drangel with a copy of a letter it sent to Choon's lawyer in response to the cease and desist letters. (Pl. SMF ¶ 5; ECF No. 89-1 ¶ 5).

On August 19, 2013, ten days after the parties entered into the Marketing Agreement, Choon's filed suit against Plaintiff in the United States District Court for the Eastern District of Michigan asserting the same claims raised in its cease and desist letters ("the Choon's Action"). (Def. SMF ¶ 10). Specifically, Choon's brought claims including but not limited to direct and induced patent infringement of its "'565 Patent" and "'420 Patent," relating to its Rainbow Loom design. (ECF No. 91-4).

Defendant claims it was "not selling FunLoom products prior to August 19, 2013." (Def. SMF ¶ 11). Instead, Defendant claims that it began selling FunLoom "sometime in late August [2013]," which is around the same time Defendant claims it became aware of the Choon's Action. (Hr'g Tr. at 52:18–22). On April 22, 2014, Choon's added Defendant to the Choon's Action in its Third Amended Complaint. (Def. SMF ¶ 13). Both Plaintiff and Defendant participated in the Choon's Action, and Plaintiff eventually settled all of Choon's claims against it. (Pl. SMF ¶¶ 3, 6). Defendant continued to litigate the Choon's Action and eventually won on summary judgment, which is currently pending on appeal. (Def. SMF ¶¶ 17–18). Plaintiff claims it incurred $339,705.42 in costs associated with litigating and settling the Choon's Action, (Pl. SMF ¶ 7), and Defendant claims it incurred costs of around $1.2 million in the Choon's Action, (Def. SMF ¶ 17).

In part based on the Choon's Action and in part based on other disputes between Plaintiff and Defendant not relevant to the Court's current analysis, Plaintiff subsequently brought this action against Defendant on May 19, 2015 asserting the following claims: Breach of the Marketing Agreement ("Count I"); Declaratory Judgment ("Count II"); Breach of the Addendum to the

4

Marketing Agreement entered into between the parties ("Count III"); Indemnification ("Count IV"); and Trademark Violation ("Count V").[2] (ECF No. 1 ¶¶ 43–80). Defendant answered and filed the following counter-claims: Breach of Contract as to the Indemnity Clause ("First Counter-Claim"); Breach of the Addendum to the Marketing Agreement entered into between the parties ("Second Counter-Claim"); and Breach of the Implied Contract of Good Faith and Fair Dealing ("Third Counter-Claim"). (ECF No. 31). Both Plaintiff and Defendant now move for summary judgment on their claims for indemnification, *i.e.* Plaintiff's Count IV and Defendant's First Counter-Claim, seeking to recover from the other party the costs they incurred defending themselves in the Choon's Action.

## II. LEGAL STANDARD

Summary judgment is appropriate when, drawing all reasonable inferences in the non-movant's favor, there exists no "genuine dispute as to any material fact" and the movant is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56(a); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). "[T]he moving party must show that the non-moving party has failed to establish one or more essential elements of its case on which the non-moving party has the burden of proof at trial." *McCabe v. Ernst & Young, LLP*, 494 F.3d 418, 424 (3d Cir. 2007) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986)).

The Court must consider all facts and their reasonable inferences in the light most favorable to the non-moving party. *See Pa. Coal Ass'n v. Babbitt*, 63 F.3d 231, 236 (3d Cir. 1995). If a reasonable juror could return a verdict for the non-moving party regarding material disputed factual issues, summary judgment is not appropriate. *See Anderson*, 477 U.S. at 249 ("[A]t

---

[2] The addendum to the Marketing Agreement referenced above was discussed extensively in the Court's previous Opinion, (ECF No. 58), but said addendum is not relevant to the issue currently before the Court.

the summary judgment stage the judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial.").

### III. ANALYSIS

The main issue before this Court is whether the uncontested facts in the record entitle either Plaintiff or Defendant as a matter of law to indemnification under the Indemnity Clause from the other party for the expenses that each one incurred litigating the Choon's Action. The Marketing Agreement is governed by New Jersey law. (Marketing Agreement ¶ 15). "As a matter of well-settled legal doctrine, it is clear that an indemnity provision is to be construed in accordance with the rules for construction of contracts generally, and hence that the judicial task is to ascertain the intention of the parties." *Mantilla v. NC Mall Assocs.*, 167 N.J. 262, 272 (2001) (citation omitted). "When the meaning of the clause is ambiguous, however, the clause should be strictly construed against the indemnitee." *Ramos v. Browning Ferris Indus. of S. Jersey, Inc.*, 103 N.J. 177, 191 (1986).

Having extensively reviewed the Indemnity Clause restated above and the arguments raised in the parties' briefs and at oral argument, the Court finds that neither party is entitled to indemnification. The Court bases this conclusion on the New Jersey "common-law principle that 'an indemnitee who has defended against allegations of its independent fault may not recover its [defense] costs,'" absent explicit contractual language to the contrary. *Mantilla*, 167 N.J. at 272 (quoting *Cent. Motor Parts Corp. v. E.I. duPont deNemours & Co., Inc.*, 251 N.J. Super. 5, 10 (App. Div. 1991)). Though traditionally applied to cases of personal injury and negligence, the Court finds that the underlying legal principles driving *Mantilla*, 167 N.J. at 272, and *Cent. Motors Parts Corp.*, 251 N.J. Super. at 10—specifically, that there is an assumption against indemnification in independent fault cases—applies the same to this case. Indeed, it seems

contrary to public policy and principles of fairness for a party to receive the benefit of indemnification for its own alleged wrongdoing unless there is clear contractual language to the contrary, regardless of whether that alleged wrongdoing relates to a claim of personal injury or patent infringement, such as the claims alleged in the Choon's Action. *See SGS U.S. Testing Co., Inc. v. Takata Corp.*, Civ. No. 09-6007, 2016 WL 1382364, at *8 (D.N.J. Apr. 6, 2016) (explaining that an indemnitee cannot recover from its co-defendant indemnitor for its own alleged wrongdoing, because "the party who caused that needless expenditure was not Defendant #2, but the overreaching plaintiff."); *see also Promaulayko v. Johns Manville Sales Corp.*, 116 N.J. 505, 509 (1989) ("[t]he purpose of indemnification is restitution to prevent an active wrongdoer from being unjustly enriched by having another party discharge the obligation of the active wrongdoer.") (citation omitted).

As an initial matter, the Court finds that the Indemnity Clause does not allow the parties to be indemnified for their own alleged wrongdoing, as there is nothing in the indemnity clause specifically stating that either party in the position of indemnitee can recover for claims they are independently responsible for. Indeed, the Indemnity Clause supports a finding against indemnification in independent fault cases, as the language in the contract limits an indemnitee to recovery solely for the conduct of the indemnitor. For example, the Indemnity Clause states that Plaintiff shall be indemnified by Defendant for claims arising from Defendant's "*own* negligence." (Marketing Agreement ¶ 11(b) (emphasis added)). Additionally, Plaintiff can be indemnified for any third party claim arising out of the manufacturing and marketing of FunLoom, "including for example any claim of personal injury, trademark infringement, or false or deceptive advertising (*with the exception of any third party claim that results from information and/or marketing materials provided by* [Plaintiff] *to* [Defendant])." (*Id.* (emphasis added)). Similarly, Defendant

is to be indemnified by Plaintiff only for claims arising from Plaintiff's breach of *its* representations or warranties "including, but not limited to third party infringement claims," or Plaintiff's "*own* negligence." (Marketing Agreement ¶ 11(a) (emphasis added)). As this language does not include indemnification in independent fault based cases, neither party is entitled to indemnification under the Indemnity Clause if the Choon's Action was based on their independent alleged wrongdoing.

Here, Choon's sued Plaintiff and Defendant for their independent alleged infringements of the Rainbow Loom. It is clear to the Court that Plaintiff was sued for its own acts of infringement, considering Choon's initially sued Plaintiff based on its alleged infringement of Choon's trademarks and patents, which occurred prior to Plaintiff and Defendant entering into the Marketing Agreement. (Def. SMF ¶ 10; *see also* ECF No. 91-4 (Choon's Initial Complaint)). The Court also finds that Defendant was sued for its own alleged infringement, because it individually manufactured and marketed the FunLoom product for its own sales pursuant to the Marketing Agreement beginning in late August of 2013, after it was already aware of the Choon's Action. Whether explicitly or implied, each party seems to accept that it was sued by Choon's based on its own independent conduct, as Plaintiff specifically argued in its reply brief in support of its motion for summary judgment that "[p]erhaps it could be fairly stated that nobody here caused anyone else's costs; they were caused by the baseless claim of another," (ECF No. 91 at 10 n.5), and Defendant conceded at oral argument that it was "theoretically true" that it would not have been added to the Choon's Action had it not made its own sales of FunLoom, (Hr'g Tr. at 52:10–22).[3]

---

[3] Anecdotally, the settlement agreement between Plaintiff and Choon's specifically states that "[Defendant] sells *its own* Fun Loom ('IV Fun Loom') through *its own* channels of trade and under license from [Plaintiff]." (ECF No. 85-5 at 1 (emphasis added)).

8

Furthermore, the parties entered into the Marketing Agreement, and engaged in the alleged infringement against Choon's, with "open eyes" regarding Choon's claim of infringement. It is clear that Plaintiff was aware of Choon's claims based on Choon's cease and desist letters, which it received prior to entering into the Marketing Agreement. (ECF No. 91-8 (showing that Choon's cease and desist letters were sent in June 2013, prior to the Marketing Agreement)). Defendant argues that it was not aware of Choon's claim of infringement before entering the Marketing Agreement, because Plaintiff failed to inform Defendant of Choon's cease and desist letter. (ECF No. 95 at 9; Def. SMF ¶ 16). However, aside from the fact that Plaintiff communicated Choon's claim to a lawyer affiliated with Defendant, Defendant conceded that it was aware of the Choon's Action before it began selling FunLoom pursuant to the Marketing Agreement and went forward with selling the allegedly infringing product regardless, (Hr'g Tr. at 52:4–22; Def. SMF ¶ 11). *See Bonutti Skeletal Innovations LLC v. Conformis, Inc.*, Civil Action No. 12-1109, 2013 WL 6040377, at *2 n.5 (D. Del. Nov. 14, 2013) (stating that it is "objectively reckless" to continue selling a potentially infringing product despite knowing the risk of the potential infringement) (citing *Fairchild Semiconductor Corp. v. Power Integrations, Inc.*, 935 F. Supp. 2d 772, 779 (D. Del. 2013)). Because each party was sued by Choon's for their individual conduct, the Marketing Agreement does not explicitly allow recovery in such circumstances, and both parties entered the Marketing Agreement with "open eyes" regarding Choon's claim of infringement, the Court finds that neither Plaintiff nor Defendant is entitled to indemnification for the expenses they incurred litigating the Choon's Action as a matter of law.[4]

---

[4] Because the Indemnity Clause does not apply to either party in this case pursuant to New Jersey law, the Court finds it unnecessary to discuss any additional arguments for or against indemnification raised by the parties.

## IV. CONCLUSION

For the reasons expressed above, Plaintiff's Motion for Partial Summary Judgment and Defendant's Cross-Motion for Partial Summary are hereby denied, and Plaintiff's claim for indemnification (Count IV) and Defendant's breach of contract claim seeking indemnification (First Counter-Claim) are both dismissed as a matter of law. An appropriate Order follows this Opinion.

Dated: September 18, 2018

JOSE L. LINARES
Chief Judge, United States District Court